UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-5557-GW-AGRx | Date | December 16, 2025 |
|---|---|---|---|
| Title | *Laura R. Monteleone, et al. v. Julie Ann Goldberg, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**   **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT JULIE GOLDBERG'S MOTION FOR ATTORNEY'S FEES [32]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [32] set for hearing on December 18, 2025 at 8:30 a.m.

| | : |
|---|---|
| Initials of Preparer | JG |

**_Laura R Monteleone et al v. Julie Ann Goldberg et al_**; Case No. 2:25-cv-05557-GW-(AGRx)
Tentative Ruling on Motion for Attorney's Fees

      Before the Court is Defendant's Motion for Attorney's Fees (the "Motion"). *See* Motion, Docket No. 32. The Court has considered the Motion, Plaintiffs' Opposition ("Opp.," Docket No. 33), and Defendant's Reply ("Reply," Docket No. 34). For the reasons stated herein, the Court would **GRANT** the Motion in an amount to be confirmed at the hearing on this Motion.

## I.    Background

      On May 15, 2025, Laura R. Monteleone and Thomas A. Monteleone (collectively, "Plaintiffs") brought suit against Julie Ann Goldberg ("Defendant") and Does 1-10 in the Superior Court of California for the County of Los Angeles. *See generally* Complaint, Docket No. 1-5. Plaintiff sought both compensatory and punitive damages for malicious prosecution. *See generally* Complaint. On June 18, 2025, Defendant removed the case to this Court. *See* Docket No. 1.

      On July 2, 2025, Plaintiffs filed their First Amended Complaint ("FAC"). *See* FAC, Docket No. 13. On July 17, 2025, Defendant filed a motion to strike under the anti-SLAPP statute. *See* Docket No. 17. Plaintiffs did not file any opposition. On August 8, 2025, Plaintiffs filed a notice of voluntary dismissal. *See* Docket No. 21. On August 11, 2025, the Court vacated the hearing on Defendant's anti-SLAPP motion and ordered the parties to submit briefings on the voluntary dismissal. *See* Docket No. 24. On September 4, 2025, following receipt of the parties' briefings, the Court allowed Defendant to file a motion for attorney's fees and instructed her to include in her motion any further argument regarding whether the dismissal should be with or without prejudice.[1] *See* Docket No. 28.

      On October 6, 2025, Defendant filed the instant Motion. *See* Motion.

## II.    Legal Standard

      "Where state law provides the basis for awarding fees, courts in the Ninth Circuit generally apply state law in making that determination." *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1001 (N.D. Cal. 2025) (citations omitted); *see also Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 65 F.4th 1145, 1149 (9th Cir. 2023) ("State law governing attorneys' fees

---

[1] The Motion does not include any discussion with respect to whether Plaintiffs' voluntary dismissal should be with or without prejudice. Because Defendant makes no further argument in support of her position that this case should be dismissed with prejudice, this case will be dismissed without prejudice. *See* Docket No. 30, at 5-7.

can . . . apply to state law claims over which federal courts exercise supplemental jurisdiction.").

Under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, a "prevailing defendant" shall be entitled to recover attorney's fees and costs.  *See* Cal. Civ. Proc. Code § 425.16(c)(1); *see also Manufactured Home Communities, Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011).  Such an award of fees and costs is mandatory under the statute.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 360-67 (2004) (explaining the policy behind the mandatory fees and costs provision of the anti-SLAPP statute).  This rule applies to anti-SLAPP motions brought in federal court.  *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  Fees incurred on the fee motion may also be awarded.  *See Ketchum*, 24 Cal. 4th at 1141 ("[A]n award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under [§ 425.16].").  However, to be awarded, fees must be reasonable, *see Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362 (1995), and are measured under the lodestar method, *see Ketchum*, 24 Cal. 4th at 1136.

A voluntary dismissal filed prior to an anti-SLAPP motion being heard does not preclude a later award of attorney's fees and costs under the statute.  *See Garrison v. Baker*, 208 F.3d 221 (9th Cir. 2000).  When the plaintiff voluntarily dismisses the complaint in the face of an anti-SLAPP motion, "the Court retains the authority to make a determination as to fees under section 425.16(c) even when the anti-SLAPP motion is itself moot."  *Primacy Eng'g, Inc. v. ITE, Inc.*, No. 3:18-cv-01781-GPC-(MDD), 2019 WL 13234505, at *2 (S.D. Cal. Jan. 4, 2019).

## III.   <u>Discussion</u>

In this case, Defendant had filed a motion to strike under the anti-SLAPP statute.  Given Plaintiffs' voluntary dismissal, that motion is moot.  Nonetheless, the Court retains jurisdiction to determine the amount of mandatory fees and costs due to Defendant under § 425.16(c)(1).

In retaining jurisdiction, the Court finds that Defendant is a "prevailing defendant" under the anti-SLAPP statute.[2]  *See Coltrain*, 66 Cal. App. 4th at 106 ("[W]here the plaintiff voluntarily

---

[2] California courts differ in approach when determining whether a defendant is a prevailing defendant under the anti-SLAPP statute in the case where that defendant has been voluntarily dismissed.  *See Mireskandari v. Mail*, No. 2:12-cv-02943-MMM-(SSx), 2014 WL 12561581, at *5 (C.D. Cal. Aug. 4, 2014) (discussing the differing approaches and collecting cases).  Under *Coltrain v. Shewalter*, 66 Cal. App. 4th 94 (1998), "a plaintiff's voluntary dismissal gives rise to a presumption that the defendant is the prevailing party."  *Mireskandari*, 2014 WL 12561581, at *5.  This presumption can be overcome through "evidence as to [the plaintiff's] reasons for dismissal."  *Id.* (citing *Coltrain*, 66 Cal. App. 4th at 107).  Under *Moore v. Liu*, 69 Cal. App. 4th 745 (1999), "the determinative factor in identifying the

dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under [§ 425.16(c)(1)]."). Under *Coltrain*, Plaintiffs' voluntary dismissal of the action creates a presumption that Defendant is the prevailing party. *See id.* at 107. Plaintiffs did not file an opposition to the anti-SLAPP motion and do not address in their opposition to the Motion their reasons for dismissing the action while the anti-SLAPP motion was still pending. As such, the Court would find that Plaintiffs have not overcome the presumption that Defendant is the prevailing party for purposes of attorney's fees and costs under the anti-SLAPP statute. *See, e.g.*, *Fleming v. Coverstone*, No. 3:08-cv-00355-WQH-(NLS), 2009 WL 764940, at *6 (S.D. Cal. Mar. 18, 2009) (finding that a defendant was a prevailing party within the meaning of California's anti-SLAPP statute where the plaintiff "d[id] not assert that he dismissed the defamation claim because Plaintiff ha[d] substantially achieved his goals through settlement, because Defendant was insolvent, or for other reasons unrelated to the probability of success on the merits"). Accordingly, the Court would find that Defendant is the prevailing party under the anti-SLAPP statute and is generally entitled to statutory attorney's fees and costs commensurate with her efforts in filing a motion under the statute.

## A. Defendant's Entitlement to Attorney's Fees and Costs

While Defendant does not seek to "recover her own fees for her own time,"[3] she seeks to "recover fees that she hired her firm to represent her for" and "those of contract counsel who is retained to assist her." *See* Motion at 6-7 (citations omitted). Defendant claims that "[t]hese fees are compensable, notwithstanding [her] self-represented status." *Id.* (citations omitted). Plaintiffs contend in opposition that Defendant may not recover attorney's fees because she "is not liable for, nor has she paid for any attorney fees and costs as a self-represented litigant." Opp. at 3.

Plaintiffs primarily rely on the California Supreme Court's decision in *Trope v. Katz*, 11

---

prevailing party is not which party realized its litigation objectives, but rather which party would have prevailed on the merits of the anti-SLAPP motion." *Mireskandari*, 2014 WL 12561581, at *5. Federal courts applying the anti-SLAPP statute have generally followed *Coltrain*, "which provides a pragmatic approach to avoid the 'inappropriate . . . waste of scarce judicial resources to determine who would have won a voluntarily dismissed action.'" *See id.* at *6 (quoting *Ryans v. Editions Ltd. W., Inc.*, No. 5:06-cv-04812-PSG, 2007 WL 2778408, at *3 (N.D. Cal. Sept. 21, 2007)). This Court agrees with other federal courts that have followed *Coltrain* and applies its rule to the case at bar.

[3] Defendant clarifies that the work that she personally performed in this case, including "the drafting, review or approval of work completed on this case for her benefit by law clerks or contract attorneys[,] has not been included in the chart of attorney fees upon which this motion is based, and has not been included in the request for the attorney fee award." *See* Motion at 9.

Cal. 4th 274 (1995), in which the court held that a law firm was not entitled to recover reasonable attorney's fees after successfully representing itself in a breach of contract case brought by a client. *See id.* at 277. The court reasoned that, despite the availability of reasonable attorney's fees to the prevailing party under the parties' contract, enforceable under California Civil Code § 1717's contractual fee-shifting provision, an "attorney who chooses to litigate in propria persona . . . does not pay or become liable to pay consideration in exchange for legal representation [and thus] cannot recover 'reasonable attorney's fees' under Civil Code section 1717 as compensation for the time and effort he expends on his own behalf or for the professional business opportunities he forgoes as a result of his decision." *Id.* at 292.

The Ninth Circuit has indicated, however, that the *Trope* rule restricting in propria persona attorneys from recovering fees is narrow. *See Farmers Ins. Exch. v. L. Offs. of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1238 (9th Cir. 2001). California courts have focused their inquiry in such cases on whether the attorney's fees were "incurred." *See PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1093-94 (2000); *Gilbert v. Master Washer & Stamping Co., Inc.*, 87 Cal. App. 4th 212, 220-21 (2001). For instance, in *Witte v. Kaufman*, 141 Cal. App. 4th 1201 (2006), the court indicated that "[a]n attorney appearing in an action on his own behalf may nevertheless retain outside counsel for assistance, and the legal expenses incurred for such outside representation may be included in an award of attorney fees." *Id.* at 1211-12 (citing *Mix v. Tumanjan Dev. Corp.*, 102 Cal. App. 4th 1318, 1324-25 (2002)). The Court would, therefore, agree with Defendant that she may seek attorney's fees for outside counsel assistance.

Plaintiffs also contend in opposition that Defendant may not recover attorney's fees based on the work completed by Danielle Fackenthal ("Ms. Fackenthal") – an out-of-state contract counsel who is neither licensed in California nor permitted to appear pro hac vice before this Court in this action.[4] *See* Opp. at 2-3. Both parties cite the Ninth Circuit's decision in *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009), in which plaintiffs were allowed to

---

[4] Plaintiffs also appear to argue that Ms. Fackenthal does not qualify as contract counsel based on the implication that she is an employee of Defendant's law firm. *See* Opp. at 4. Plaintiffs attach as an exhibit the Statement of Information filed with the California Secretary of State for Goldberg & Associates, PC, which lists Ms. Fackenthal as a director. *See* Ex. 1, Docket No. 33. Defendant indicates that "Ms. Fackenthal has an easily searchable employment history that does not include Goldberg & Associates after the time frame inferred by the Plaintiffs." Reply at 4. Defendant explains that Ms. Fackenthal has not worked for or with Goldberg & Associates for nearly nine years. *See id.* at 5. At this time, the Court is unconvinced by Plaintiffs' suggestion that Ms. Fackenthal does not qualify as outside counsel.

4

recover attorney's fees for work completed by an Oregon attorney who was not licensed in California and had not applied for admission to practice pro hac vice. *See id.* at 822-25. Defendant avers that *Winterrowd* stands for the proposition that "an out-of-state attorney may recover fees if he (1) would have been admitted pro hac vice or (2) did not 'appear' before the court, meaning that he acted as litigation support." Motion at 7-8. Defendant claims that Ms. Fackenthal would have been admitted pro hac vice if she had applied to be. *See id.* at 8. Plaintiffs take the position that *Winterrowd* is factually distinguishable and that fees are not recoverable where "a party acting in pro per utilizes an out-of-state attorney to provide support." *See* Opp. at 4. Plaintiffs further suggest that Ms. Fackenthal has engaged in the unauthorized practice of law by providing legal support to Defendant. *See id.*

In agreeing with Defendant's reading of *Winterrowd*, the Court finds that Ms. Fackenthal "would have certainly been permitted to appear *pro hac vice* as a matter of course had . . . she applied." *Winterrowd*, 556 F.3d at 922. Indeed, she has already been admitted pro hac vice in a related matter for this Court involving the same parties. *See Julie Ann Goldberg v. Laura Rachel Ruano et al*, 2:23-cv-02395-GW-(AGRx), Docket No. 258. Defendant indicates that Ms. Fackenthal is licensed to practice law in both New Jersey and Georgia and "has never been disciplined by either [state] in her 13 years of practice." *See* Motion at 8. She maintains her solo law practice in Georgia, where she practices federal litigation and immigration law, and completes contract work for other attorneys. *See id.*; Declaration of Danielle Fackenthal ("Fackenthal Decl."), Ex. A, Docket No. 32-1, at ¶ 2. Plaintiffs do not offer any specific reasons why Ms. Fackenthal would not have been admitted pro hac vice. The Court would, therefore, decline to bar Defendant's recovery of attorney's fees based on Ms. Fackenthal's assistance with "prepar[ing] specific briefs and motions on a per filing basis" in this action. *See* Motion at 9.

**B. Reasonableness of the Attorney's Fees and Costs**

1. Reasonableness of Rates

"The prevailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (internal quotation marks omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Defendant asserts that "an hourly rate of $450 for Ms. Fackenthal and a rate of $150 for

paralegals and law clerks who assisted Ms. Fackenthal in the preparation of necessary filings" is reasonable.[5]  *See* Motion at 12.  Defendant claims that courts in this District "ha[ve] found rates ranging from $400 an hour to more than $600 an hour as reasonable for attorney fees in anti-SLAPP litigation."  *Id.* (citing *Sharij v. Vujicic*, No. 2:21-cv-07434-SVW-(PLAx), 2025 WL 736572, at *2-3 (C.D. Cal. Jan. 23, 2025) and *Dickinson v. Golden Rain Found. of Laguna Woods*, No. 8:22-cv-01397-SPG, 2023 WL 2573863, at *2-3 (C.D. Cal. Mar. 17, 2023)).

In general, "[t]he Court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district."  *Hernandez v. FCA US LLC*, No. 17-cv-5452-GW-(ASx), 2019 WL 2932637, at *3 (C.D. Cal. Jan. 4, 2019); *see* Wolters Kluwer/CEB, *2024 Real Rate Report* ("Real Rate Report").  For lawyers practicing litigation in Atlanta, Georgia, partners bill between $375 and $810 with a median of $561 and associates bill between $316 and $626 with a median of $420.[6]  *See* Real Rate Report at 10.  For lawyers practicing litigation in Trenton, New Jersey, partners bill between $313 and $841 with a median of $564 and associates bill between $349 and $520 with a median of $473.  *Id.* at 23.  While there is no information on law clerks, the billing rate for paralegals is between $149 and $340 with a median of $229.  *Id.* at 9.  Based on the Real Rate Report and the cases cited by Defendant, the Court finds Defendant's rates are reasonable and awards them as follows:

| Name | Awarded Rate |
| --- | --- |
| Danielle Fackenthal (Attorney) | $450 |
| Christopher Feliciano (Law Clerk) | $150 |
| Adriana Flores (Paralegal) | $125 |

2.  Reasonableness of Hours

The party seeking fees bears the "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001) (citation omitted).  Although "it is not necessary to provide

---

[5] Based on the fee chart submitted in support of the Motion, the 0.1 hours of work performed by Defendant's paralegal is billed at a rate of $125, not $150.  *See* Ex. 1, Docket No. 32-1, at 2.

[6] In her declaration, Ms. Fackenthal states that: "I am the owner and sole attorney of Fackenthal Law, P.C., headquartered in Snellville, Georgia."  Fackenthal Decl. ¶ 2.  Snellville is about 25 miles from Atlanta.

detailed billing timesheets to support an award of attorney fees under the lodestar method," *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 1324 (2014), the "evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims and whether the hours were reasonably expended," *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). "To that end, the court may require [a prevailing party] to produce records sufficient to provide a proper basis for determining how much time was spent on particular claims." *ComputerXpress*, 93 Cal. App. 4th at 1020 (internal quotation marks and citation omitted). The court should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Defendant asserts that in having "to transfer jurisdiction, prepare and file the Special Motion to Strike and reply in support thereof, as well as additional supplemental briefing requested by this Court following the voluntary dismissal of the Plaintiffs," she incurred attorney's fees from work performed by a law clerk, her paralegal, and Ms. Fackenthal. *See* Motion at 14. Based on the fee chart submitted in support of the Motion, the award requested appears to be based on a total of 63.8 hours. *See* Ex. 1, Docket No. 32-1. Below is a breakdown of the hours by individual:

| Name | Number of Hours |
|------|-----------------|
| Danielle Fackenthal (Attorney) | 39.1 |
| Christopher Feliciano (Law Clerk) | 24.6 |
| Adriana Flores (Paralegal) | 0.1 |

*See id.* The fee chart indicates that these hours include time spent, *inter alia*, reviewing Plaintiffs' FAC, researching and preparing the anti-SLAPP motion and reply briefing, reviewing Plaintiffs' notice of dismissal, and researching and preparing the instant Motion. *See id.*

Plaintiffs contend that these hours are "excessive and lack[ ] proper evidentiary support and credibility." Opp. at 6. Plaintiffs first claim that Ms. Fackenthal's declaration in support of the Motion "fails to attest to any detailed and specific hours incurred for specific, detailed services provided" and there is no declaration from the other individuals supporting the purported work they did. *See id.* It is unclear to both Defendant and this Court which tasks Plaintiffs believe lack sufficient detail and what further information Plaintiffs believe is required to support the hours requested. The fee chart clearly provides the specific tasks that were performed by each individual and the time spent on each task. *See* Ex. 1, Docket No. 32-1.

Plaintiffs next claim that "the descriptions of the services rendered are so vague or block billed in a way that makes it impossible to determine whether or not those services were reasonable and necessary for purposes of prevailing with the anti-SLAPP motion." Opp. at 7. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012) (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)) (internal quotation marks omitted). "[T]he Court may reduce hours that have been block-billed because block billing makes it more difficult to determine how much time was spent on particular activities." *Id.* (quoting *Welch*, 480 F.3d at 948) (internal quotation marks omitted). However, a "reduction for block-billed hours may not be appropriate if individual tasks are specified and the entries are detailed enough for the Court to assess the reasonableness of the hours billed." *Id.* (internal quotation marks omitted). Plaintiffs do not identify which descriptions are vague and which tasks have been so lumped together such that the Court should view them as being block-billed. While the Court would agree, for example, that the nine hours Ms. Fackenthal spent to "Research and Prepare Special Motion to Strike" could have been broken down by the time she spent on legal research and the time she spent drafting the motion, the Court would find that these tasks are not so lumped together so as to render it impossible for the Court to evaluate the reasonableness of the hours requested.

Even if the Court were to find sufficient evidence, Plaintiffs suggest that the hours are excessive and inflated because "most of the purported hours are not related to the anti-SLAPP motion at all." *See* Opp. at 7. Plaintiffs cite three cases in support of their argument: *S. B. Beach Props. v. Berti*, 39 Cal. 4th 374, 381 (2006); *Lafayette Morehouse, Inc. v. Chron. Publ'g Co.*, 39 Cal. App. 4th 1379, 1383 (1995), and *Christian Research Institute*, 165 Cal. App. 4th at 1324-25. An identical argument based on the same three cases was made in *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-(AHG), 2021 WL 409724, at *9 (S.D. Cal. Feb. 5, 2021). The court in *Herring Networks* indicated that these cases were unpersuasive. *See id.* First, "*Lafayette Morehouse* was decided before the 1997 amendment of section 425.16, which mandated the statute be construed broadly," and "the *Lafayette Morehouse* court reduced fees to those directly related to the anti-SLAPP motion because the motion concerned only one of seven causes of action." *Id.* (citations omitted). Second, "[i]n *Christian Research Institute*, the court affirmed the trial court's reductions to the requested 600 hours, not based on counsel working on non-anti-SLAPP filings,

8

but because the case was vastly overstaffed for a simple motion and the billing entries were vague." *Id.* (same).  Third, "[i]n *S. B. Beach Properties*, the court affirmed the trial court's denial of defendants' fee motion, because they were seeking fees for an anti-SLAPP motion they never filed – the plaintiff voluntarily dismissed the case the day before they planned to file the anti-SLAPP motion." *Id.* (same).  For the same reasons, the Court finds these cases unpersuasive here.

Although Plaintiffs' voluntary dismissal came before this Court could consider the merits of Defendant's anti-SLAPP motion, "the entire lawsuit here is subject to the anti-SLAPP motion and, therefore, all attorneys' fees and costs expended in this case 'occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion.'" *Zwebner v. Coughlin*, No. 3:05-cv-01263-JAH-(AJB), 2006 WL 8455423, at *2 (S.D. Cal. Jan. 25, 2006) (quoting *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002)).  As such, the Court considers all of the requested hours, not just the hours spent on the anti-SLAPP motion itself.

While the Court finds Defendant's rates and hours reasonable, the Court is unable to determine how Defendant calculated the lodestar to be $18,897.50.  *See* Motion at 13.  By the Court's own calculation based on the hours and rates Defendant requested, the lodestar should be $21,297.50.  Defendant also requests an additional $2,250 for the five hours Ms. Fackenthal spent "researching and preparing" the reply brief in support of the Motion.  *See* Reply at 2.  Due to the discrepancy in the lodestar amount, however, the Court will hear from Defendant with respect to her calculation before ordering the amount in attorney's fees and costs to be awarded.

## IV.    Conclusion

Based on the foregoing discussion, the Court would **GRANT** the Motion in an amount to be confirmed at the hearing on this Motion.